HÉCTOR FAJARDO ROGER, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; TESORERO DE PUERTO RICO, interventor. LUIS V. VALIENTE y CARMEN ROGER, peticionarios, *v.* EL MISMO, demandado; EL MISMO, interventor. OSVALDO CÓRDOVA y WILDA FAJARDO ROGER, peticionarios, *v.* EL MISMO, demandado; EL MISMO, interventor.

Números 256, 257 y 258.
*Sometidos:* 10 de abril de 1951. *Resueltos:* 30 de abril de 1956.

---

208

*Oscar Souffront* y *J. J. Ortiz Alibrán,* abogados de los peticiona-
rios; *Hon. Procurador General Víctor Gutiérrez Franqui* y
*Manuel J. Medina Aymat, Procurador General Auxiliar,* abo-
gados del interventor, demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

Héctor Fajardo Roger, Wilda Fajardo Roger y Carmen Roger adquirieron por herencia[1] de Mateo Fajardo Dávila —fallecido el 2 de agosto de 1938—una finca de 308.33 cuerdas denominada "Hacienda Carolina", ubicada en el barrio "Buey" del término municipal de San Germán, en la cual la participación de cada uno de ellos era, y continuó siendo hasta su venta por no haberse verificado partición, la siguiente: Héctor y Wilda Fajardo Roger, una mitad cada uno de $5/6$ partes de la mitad, y Carmen Roger, la mitad más $1/6$ parte de la otra mitad.

La referida finca fué vendida a la Autoridad de Tierras en el año 1944 por el precio de $30,027.50.

En las declaraciones individuales de ingresos rendidas por los aquí peticionarios para el año 1944, cada uno reclamó una pérdida—en proporción a su respectivo condominio—derivada de la alegada pérdida total de $17,185.76 producida por la la venta de la mencionada finca, sobre un reclamado valor en el mercado a la fecha de su adquisición no menor de $47,213.26.

El Tesorero no aceptó las pérdidas reclamadas y, tomando como valor en el mercado la tasación de la finca a la fecha de la muerte de Mateo Fajardo Dávila—$12,860.00—determinó una ganancia total, con motivo de su venta, de $17,167.50, ganancia que adjudicó a cada uno de los aquí peticionarios en la proporción de su respectivo interés en la misma. Luego de los trámites de rigor notificó a cada uno de ellos la deficiencia final correspondiente.

Acudieron separadamente los peticionarios para ante el extinto Tribunal de Contribuciones, en la forma dispuesta por ley, impugnando la determinación de deficiencia hecha por el Tesorero, y dicho tribunal, luego de recibir prueba de ambas

---

[1] Las alegaciones de los peticionarios a ese efecto, incluyendo la participación de Carmen Roger tanto en cuanto a $1/6$ parte de una mitad como en cuanto a la otra mitad de la finca, fueron aceptadas por el Tesorero.

partes en uno de los casos—en virtud de la cual quedaron sometidos los otros—declaró probado (1) que la finca que en 1944 vendieron los peticionarios a la Autoridad de Tierras tenía, en 1938, fecha de su adquisición por ellos, un valor en el mercado de $51,400, *incluyendo* el valor de las plantaciones de café—a cuyo cultivo se dedicaba dicha finca—y las edificaciones y maquinaria existentes en la misma; (2) que una vez en posesión de la referida finca, los aquí peticionarios abandonaron totalmente—por su propia acción voluntaria y para conveniencia suya—la siembra y cultivo de café, dedicando la finca a pastos para el cuido de bueyes de trabajo, de su propiedad, que utilizaban en otras fincas suyas dedicadas al cultivo de caña, desapareciendo poco a poco el café que antes existía en dicha finca; (3) que para el mismo año 1938, la finca de referencia, *excluyendo* las plantaciones de café ya desaparecidas en el año 1944 cuando fué vendida a la Autoridad de Tierras, pero *incluyendo* las edificaciones y la maquinaria, tenía un valor real y efectivo de $36,850; y que habiéndose vendido en 1944 en $30,027.50, se produjo una pérdida total, como resultado de dicha venta, de $6,822.50.

En virtud de tales conclusiones dictó sentencia en cada uno de los casos resolviendo, en los de Héctor y Wilda Fajardo Roger, que cada uno de ellos sufrió una pérdida de $1,421.35; y, en el de Carmen Roger, que ésta sufrió una pérdida de $3,979.80; ordenando al Tesorero, en cada caso, la radicación de un nuevo cómputo dentro del término prescrito para ello.

Los peticionarios, en solicitudes separadas de *certiorari* —que por tener idénticos fundamentos trataremos de ahora en adelante como una sola—acudieron a este Tribunal interesando la revisión de las referidas sentencias. Expedimos los autos.

 Sostienen los peticionarios que el tribunal a quo incurrió en error (1) al fijar, como base para determinar la ganancia o pérdida, la cantidad de $36,850, que era el valor de la finca en el año 1944 y no en el 1938, ignorando así el

valor de la misma en el mercado en 1938, que era de $51,400 según declaró probado el propio tribunal; (2) al resolver que como en 1944 "la finca tenía un valor inferior al que tenía en el año 1938 por razón del abandono en que fué dejada por sus nuevos dueños" la base debe ser $36,850; (3) al resolver, en los casos de Héctor y Wilda Fajardo Roger, que la pérdida de cada uno de ellos fué de sólo $1,421.35 y, en el de Carmen Roger, que dicha pérdida fué de sólo $3,979.80, y no la pérdida reclamada por cada uno de ellos; y (4) al apreciar la evidencia.

No hay controversia aquí en cuanto a que el valor de la propiedad, cuando fué adquirida por los peticionarios en 1938, era de $51,400, incluyendo esa suma el valor del terreno, de las edificaciones y maquinaria, así como el de las plantaciones de café propiamente dichas; y que si éstas últimas no hubieran estado presente en esa fecha, el valor de la propiedad hubiera sido de $36,850. Tampoco hay controversia en cuanto a que dichas plantaciones fueron abandonadas y destruídas por los peticionarios para la propia conveniencia de sus demás actividades agrícolas en sus otras fincas dedicadas al cultivo de caña. ([2]) La controversia entre las partes surge en cuanto a si, habiendo desaparecido dichas plantaciones entre 1938 y 1944—por abandono de los peticionarios, en interés de las demás actividades de sus negocios agrícolas—la base para computar, conforme a las secs. 7(a)(5) y 5(a) y (b) de la Ley de Contribuciones sobre Ingresos de 1924, según enmendada—que es la ley aplicable—([3]) la pérdida sufrida por

---

([2]) Según la prueba en autos, en dicha propiedad existían en 1938, 105 cuerdas de pasto, en vegas y lomas, de las cuales unas 80 eran yerba de guinea y unas 25 de malojillo o pasto natural.

La última cosecha de café fué en el año 1941; y los últimos dos años anteriores a la venta la finca sólo se dedicó a pastar las yuntas de bueyes utilizadas en las demás fincas de los peticionarios.

([3]) Sección 7.—(a) "La base para determinar la ganancia o pérdida derivada de la venta u otra disposición de la propiedad adquirida después de febrero 28 de 1913, será el costo de dicha propiedad, con excepción de: (1) ...........; (2) ...........; (3) ...........; (4) ...........;

"(5) Si la propiedad fué adquirida por manda, legado, o herencia, la

ellos con motivo de la venta en 1944, debe establecerse tomando el valor de $51,400, representado por la totalidad de los activos presentes en la finca en el año 1938—entre los cuales estaban las plantaciones de café—o si debe establecerse tomando el valor de $36,850, representado por dichos activos sin las plantaciones de café, que fué lo que se vendió en el año 1944.

Los peticionarios sostienen que "las tierras no son depreciables, conservando íntegro el valor de la base correspondiente, para el caso de venta u otra disposición de propiedad" y que ninguno de ellos reclamó deducción alguna por plantaciones destruídas o abandonadas durante los años 1938 al 1944, "único caso en que estaría justificada una reducción de la base en este caso, aunque es de presumirse que si se hubiese reclamado no hubiera sido concedida, por ser contrario a la ley y los reglamentos."

La premisa de que parten los peticionarios es equivocada. Si bien los árboles (plantaciones) de café, por estar unidos al suelo, son bienes inmuebles, art. 263 del Código Civil, ed. 1930, constituyen en sí propiedad depreciable, aun cuando la tierra no lo sea,[4] *Redlands Security Co.* v. *Commissioner*,

---

base será el justo valor en el mercado en el momento de dicha adquisición . . . ."

Sección 5(a).—"Excepto lo que más adelante se provee en esta sección, la ganancia derivada de la venta u otra disposición de la propiedad, será el excedente de la cantidad realizada en dicha venta o disposición, sobre la base que establece la subdivisión (a) o (b) de la sección 7, y la pérdida será el exceso de dicha base sobre la cantidad realizada.

"(b) Al computarse el montante de ganancia o pérdida de acuerdo con la subdivisión (a) deberá hacerse el reajuste adecuado de (1) cualquier gasto que se pueda propiamente cargar a la cuenta de capital, y (2) cualquier partida de pérdida, merma, desgaste y deterioro, desuso, amortización o agotamiento, que se pueda cargar propiamente con respecto a dicha propiedad."

[4] El art. 129 del Reglamento del Tesorero dispone:

"Propiedad Depreciable.—La necesidad de una deducción por depreciación surge del hecho de que ciertos bienes usados en el negocio gradualmente llegan a un punto en que su utilidad se extingue. La deducción debe circunscribirse a bienes de esta naturaleza.

"En el caso de bienes corporales, se aplica a aquellos que son susceptibles de uso y desgaste, a deterioro o decaimiento debido a causas naturales,

5 B.T.A. 956, *cf. Brown* v. *Tribl. de Contribuciones*, 74 D.P.R. 264, 271, y su depreciación se admite como deducción contra el ingreso bruto del año en que fué sufrida, bajo la sec. 16 (*a*) (8) de la ley. En ese sentido, el factor *depreciación* entra en juego en este caso para el reajuste de la base—valor original de las plantaciones en 1938—y determinar así el valor de éstas a la fecha de su ulterior pérdida total. Tanto la depreciación como la pérdida por destrucción, a su vez, son partidas a ser consideradas, bajo la sec. 5 (*b*) (2) de la ley para hacer el reajuste de la base que establece la 7 (*a*) (5), y determinar así la verdadera pérdida *derivada* de la venta de la finca en 1944. La destrucción de dichas plantaciones constituye una pérdida bajo la sec. 16 (*a*) (4) de la ley (⁵) deducible del ingreso brutó durante el año, o años contributivos, en que fué realmente sufrida. *Gaylord* v. *Commissioner of Internal Revenue*, 3 T. C. 281, 296. 5 Mertens, *Law of Federal Income Taxation*, sec. 28.72, pág. 317.

 Las pérdidas que la ley reconoce en su sec. 16 como deducciones durante el año contributivo en que ocurren son pérdidas de capital, (⁶) pérdidas de alguna clase de propiedad o activo, 5 Mertens ob. cit. sec. 28.12, pág. 118, ocurridas en alguna industria o negocio.

La ley trata las pérdidas y demás concesiones por merma, desgaste, deterioro, desuso, amortización o agotamiento, reco-

a agotamiento, y a obsolencia debido al progreso normal del negocio, como cuando maquinaria u otra propiedad debe ser reemplazada por nuevos inventos, o debido a lo inadecuado de la propiedad para llenar las crecientes necesidades del negocio. No se aplica a . . . la tierra, independientemente de las mejoras o desarrollo físico hecho en ella. . . . . ."

(⁵) Sección 16 (*a*).—"Al computar el ingreso neto se admitirán como deducciones:

"(1) . . . . . . . . . . . . . . .; (2) . . . . . . . . . . . . . . . .; (3) . . . . . . . . . . . . . . .;

"(4) Pérdidas sufridas durante el año contributivo y no compensadas por seguros, o en otra forma, siempre que hubieren ocurrido en alguna industria o negocio. Las pérdidas bajo este inciso y los incisos cinco y seis de esta sección podrán ser deducidas solamente en el año contributivo en que han sido realmente sufridas. . . . . . . ."

(⁶) El término capital para los fines de las deducciones por pérdidas y otras concesiones reconocidas por la sección 16 no se usa en un sentido estricto. 5 Mertens, ob. y sec. cit.

nocidas por dicha sec. 16, como devolución de capital, 3 Mertens, sec. 21.161, pág. 600, y por ello requiere por la sec. 5(b)(2), para determinar la ganancia o pérdida derivada de la venta de propiedad, el reajuste de la base que corresponda, según la sec. 7(a), deduciendo del costo, o valor en el mercado en el momento de la adquisición, según sea el caso, las partidas ya indicadas, que puedan cargarse propiamente con respecto a dicha propiedad.

Las actividades agrícolas de los peticionarios comprendían también el cultivo de la caña en otras fincas adquiridas igualmente de su causante. El cultivo de las plantaciones de café formaban parte de la totalidad de esas actividades, y su abandono y destrucción obedecieron a las ventajas que les proporcionaba dedicar la finca de café al cuido de los bueyes utilizados en la explotación de sus demás fincas. Tanto la depreciación de los arbustos como su pérdida total ocurrieron en los negocios agrícolas de los peticionarios, integrados por la totalidad de sus actividades.

El hecho de que los peticionarios no reclamaran deducción alguna ni por depreciación de las plantaciones ni por su pérdida total, en uno o más de los años contributivos entre 1938 y 1944, ciertamente no les da derecho a que se les reconozca ahora, *como pérdida derivada de la venta* de propiedad en el año contributivo 1944, lo que constituyó una pérdida derivada de otras causas, ocurrida en años contributivos anteriores. *Kittredge* v. *Commissioner of Internal Revenue*, 88 F.2d 632, *Beckridge Corp.* v. *Commissioner of Internal Revenue*, 129 F.2d 318, Cf. *United States* v. *Ludey*, 274 U. S. 295, 71 L. Ed. 1054. Las deducciones admitidas la ley en su sec. 16 sólo pueden reclamarse en el año contributivo en que han sido realmente sufridas, y no hay disposición alguna en el estatuto que permita posponer dichas deducciones—pérdida, merma, desgaste o deterioro, desuso, amortización o agotamiento—para reclamarlas en una fecha posterior, por vía de pérdida *derivada* de su posterior venta. Los peticionarios sugieren que lo que ellos hicieron fué sus-

tituir las plantaciones de café por pasto y que bajo la doctrina del caso de *López de la Rosa* v. *Tribunal de Contribuciones*, 66 D.P.R. 334 ([7]) no era reclamable deducción alguna por abandono y la destrucción del café. En cuanto a ese extremo la prueba no justifica su contención, pues aparte de que en la finca en 1938 existían ya 105 cuerdas sembradas de yerba de guinea y malojillo, no existe prueba sobre inversión alguna de capital para suplantar, mediante siembra adicional de pasto, las de café que fueron abandonadas y poco a poco destruídas.

■ Habiendo resuelto el tribunal sentenciador que el valor en el mercado de la finca en 1938, incluyendo las plantaciones de café, era de $51,400, y que de no haber estado presente dichas plantaciones en ese año su valor hubiera sido de $36,850, fácil es advertir que dicho tribunal asignó a éstas un valor de $14,550 en 1938. Habiendo desaparecido las plantaciones totalmente cuando se vendió la finca en 1944, procedió correctamente a reajustar la base original de $51,400, deduciendo de ésta los $14,550 atribuíbles a los factores de depreciación y pérdida total de las mismas, estableciendo la base ajustada en $36,850 y, por consiguiente, determinando una pérdida *derivada de la venta* por $30,027.50 en 1944, de $6,822.50, que distribuyó apropiadamente entre los peticionarios en la proporción de sus respectivos intereses en la propiedad.

*Las sentencias serán confirmadas.*

Los Jueces Asociados Sres. Sifre y Saldaña concurren en el resultado.

---

([7]) Los casos de *López de la Rosa* v. *Tribl. Contribuciones*, 66 D.P.R. 334 y *Buscaglia* v. *Tribl. Contribuciones y Caubet*, 69 D.P.R. 891, citados por los peticionarios, no tienen sitio de aplicación en la controversia surgida en el presente caso.